## Guthrie & Byles's Appeal.

92　　269
21 SC †122

1. An equitable assignment is an agreement in the nature of a declaration of trust.

2. Certain claims were assigned by the officers of a company to two attorneys, who were to collect the same and apply them in a particular way. On the same day of the assignment, by a resolution of the board of directors, a specific appropriation of these claims when collected was made. The attorneys had no notice of this resolution. *Held*, that they were right in following the order of distribution given in their instruction from the officers. *Held, further*, that the resolution of the board of directors was the mere declaration of an intention to appropriate these claims to a particular purpose, and until there was an execution of that resolution by an actual assignment of the claims to the attorneys there was no application of them.

November 24th 1879.　　Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.　STERRETT and GREEN, JJ., absent.

Appeal from the Court of Common Pleas of *Crawford county :* Of October and November Term 1879, No. 20.

Appeal of Guthrie & Byles, trustees, from the decree of the court in the matter of the petition of George Pitchford and others, for a citation to said Guthrie & Byles to account.

On the 14th day of July 1874, John Dillingham, treasurer of the Titusville Manufacturing Company, assigned to Messrs. Guthrie & Byles, accounts or claims in favor of said company against Porter, Moreland & Co., Woods, Johnson & Co., and Ralph Dawson. At the time the assignment was made Mr. Dillingham informed Messrs. Guthrie & Byles of the amounts that were due upon these several accounts, and instructed them to apply the proceeds, when collected, to the payment of the following claims against said company, and in the following order, to wit: 1st, a claim in favor of Julius Byles, $244.44 ; 2d, a claim in favor of Guthrie & Byles of $400, and the balance, if any, to the payment of such laborers as the book-keeper would direct and identify, and in accordance with statements to be furnished by him.

Messrs. Guthrie & Byles accepted the assignment for these purposes, and upon these terms and conditions. At the time the assignment was made the exact amount due upon these accounts was uncertain, but upon settlement there was ascertained to be due from Woods, Johnson & Co., the sum of $1476.19, of which Guthrie & Byles collected the sum of $600, and from Porter, Moreland & Co., the sum of $2319.57, of which Guthrie & Byles collected $500. The Dawson claim is in litigation, and is wholly uncollected. All the money collected by Guthrie & Byles was paid over to the laborers as directed by the book-keeper. This was done in two payments, July 31st, and August 29th 1874. As Guthrie & Byles were unable to collect enough to pay the laborers who were designated, Mr. D. H. Mitchell advanced to them for

this purpose $2516.74, on condition that they would refund him that amount when they would collect it from the claims in their hands. Guthrie & Byles, on the 31st of July, and 29th of August, thus paid to these laborers, under the direction of Mr. Dillingham and the book-keeper, the sum of $3616.74. The balance of the claim of Woods, Johnson and Co., after deducting the amount paid Guthrie & Byles, was afterwards attached. Mr. Mitchell gave them an indemnifying bond and received from them this balance, which he applied to the repayment of the advances he had made. The amount which Mitchell thus received from Woods, Johnson & Co., was $876.19.

On the day Mr. Dillingham assigned these accounts the following resolution was entered on the books of the company, to wit:

" Resolved, that the treasurer place in the hands of Guthrie & Byles, bills, as follows:

| | | | | | |
|---|---|---|---|---|---|
| Porter, Moreland & Co. | . | . | . | . | $ 2000 |
| Woods, Johnson & Co. | . | . | . | . | 2800 |
| Walph Dawson | . | . | . | . | 3600 |
| | | | | | $8400 |

to be collected and paid to the employees of the company for work and labor due to them."

The auditor found that Mr. Guthrie was absent when the assignments were made, and that Mr. Byles did not know of the passage of the above resolution until after the commencement of the proceedings in this case. It was proved that the general duties of the treasurer was to receive and disburse the moneys and assets in the management of the business. Mr. Dillingham, the treasurer, made the assignment. At the time he had made the assignment he gave Mr. Byles instructions how to disburse the proceeds of the accounts, and Messrs. Guthrie & Byles did disburse the money received by them as instructed. At no time prior to the commencement of these proceedings had they any knowledge that any different disposition of this money was ever intended or desired by any one.

The petitioners alleged that they were employees of the company at the time the assignment was made, and that by the terms of the resolution mentioned above, as it appears in the books of the company, Messrs. Guthrie & Byles held the money received from these accounts in trust for them and all the other employees, and that they should receive their pro rata share of the money. The respondents alleged that the resolution mentioned does not create them trustees for any one, that these accounts were assigned to them for a certain specific trust, and that the petitioners are in no way interested in it.

[Guthrie & Byles's Appeal.]

The court overruled the respondent's exceptions to the report of the auditor, and made the following decree :

"January 11th 1876, on hearing and due consideration it is ordered and decreed that the respondents render an account of the trust alleged in the petition, and Wm. S. Morris, Esq., is appointed to state the said account, charging the respondents with all money made out of the said trust, or that with due diligence ought to have been made by them, or either of them, and also finding and reporting who are the persons entitled to share in the said trust and in what proportion they are so ; what amounts have been paid to them respectively, and what amounts remain to be paid to each of them out of said trust, after making to the respondents all proper allowances for their expenses and charges in the management thereof."

From this decree this appeal was taken.

*T. B. Brawley*, for appellants.—The respondents claim that the court erred in decreeing that they should account, for the reasons that the petition did not set forth any grounds authorizing a decree, nor did the evidence show any fund in the hands of the respondents in which the petitioners had any interest. The resolution of the board of directors, passed July 14th 1874, and set forth in the petition did not, of itself, assign or transfer either of the accounts mentioned to Guthrie & Byles, nor did it authorize or direct an assignment of these claims to them. The language is, " Resolved, that the treasurer place in the hands of Guthrie & Byles bills as follows,   *   *   *   *   * to be collected and paid to the employees of the company for work and labor due them." This resolution created no trust in Guthrie & Byles. The legal title to these claims remained in the company still, and it could make any subsequent disposition of the claims it desired, or direct the proceeds to be paid to any other persons than those mentioned in the resolution.

" An agent directed to pay money generally without specification of amount, or of the person of the payee, as distinguished from others, has never been held to be a trustee for any other than the principal :" Beans *v.* Bullitt & Fairthorne, 7 P. F. Smith 221 ; Williams *v.* Everett et al., 14 East 581 ; Tiernan et al. *v.* Jackson, 5 Peters 601 ; Grant *v.* Austen, 3 Price Reports 58; Story Equity Jur., sec. 1042.

The respondents cannot be held for a secret and unknown trust which they never assumed. Fulton Bank *v.* N. Y. & Sharon Canal Co., 4 Paige 127 ; Dacy *v.* The New York Chemical Manufacturing Co., 2 Hall Superior Court Rep. 550.

*Minor & Fassett*, for appellees.—This petition is under the Act of June 14th 1836, as to trustees especially ; section 19, Purdon

[Guthrie & Byles's Appeal.]

Dig., p. 1418. This act is really but statutory chancery, with certain particulars as to mode of proceeding, and equity principles apply : Brightly Eq. Jur., sec. 314 and note.

Any order, writing or act which makes an appropriation of a fund amounts to an equitable assignment: Clemson *v.* Davidson, 5 Binn. 489. See also Mrs. Greenfield's Estate, 2 Harris 241; Caldwell *v.* Hartupee, 20 P. F. Smith 74–79.

The fund is to be distributed pro rata " to the employees of the company." Equality is equity.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1880.

In Nesmith *v.* Drum, 8 W. & S. 9, an equitable assignment is said to be an agreement in the nature of a declaration of trust, which a chancellor, though deaf to the prayers of a volunteer, never hesitates to execute when it has been made on valuable, or even good consideration. Hence, an order upon an attorney to pay over the proceeds of a claim, when collected, to a surety for the extinguishment of a note on which he was endorser for the drawers, was held to be an assignment. Following this authority, had there been a copy of the resolution, of the 14th of July 1874, served on the appellants, defendants below, at the time of the assignment of the bills against Porter, Moreland & Co. and others, or even had they had notice of that resolution, we would have been compelled to hold them as trustees for the employees of the company. But the auditor finds that Guthrie *v.* Byles had no such notice; on the other hand, when the assignment of these claims was made to them, they were instructed to apply the money when collected; 1st, upon a judgment of Julius Byles; 2d, to a claim of Guthrie & Byles; 3d, to such employees as should be designated by the book-keeper of said company. Now, as was said in Beans *v.* Bullitt, 7 P. F. Smith 221, the mere avowal of an intention to apply a fund, or have it applied, in a particular way, has never yet been held to be an application of it. Suppose then, the resolution had remained on the books without anything further having been done, would that have been a valid assignment of the claims specified to the employees ? Would it have protected those claims from attachment by other creditors ? Surely not. It was the mere declaration of an intention to appropriate these claims to a particular purpose, and until there was an execution of that resolution by an actual assignment of the claims to the trustees there was no application of them ; no interest vested in the employees, and in the meantime the company might repeal its resolution or disregard it, and appropriate the bills as it saw fit. But when the assignment was made to the appellants they were directed by the officers of the company to apply the fund, which might come into their hands, in the manner above stated.

[Guthrie & Byles's Appeal.]

If then, they were trustees, and not mere agents or attorneys of the company, they can be held to no other trust than that which they agree to take upon themselves, neither can they be called to an account by persons between whom and themselves there is no privity of contract. The officers of the corporation, doubtless, had a general power to appropriate its assets to the payment of such of its debts as they might designate, and hence when they put certain claims into the hands of the appellants to collect and appropriate in a particular manner, it was not the duty, neither was it in the power of the appellants, to search the books of the company to ascertain whether the officers were not transgressing some resolution which might have been previously passed by that company. It is possible, as we have already intimated, that had Guthrie & Byles been officially notified of the resolution, they would have been bound by it rather than by the instructions of the officers, for then the question of the power of those officers to disregard that resolution would have arisen, and they would have been held to a proper determination of that question. As the matter stands, however, all this is out of the case; the appellants did what they undertook to do, and, having so done, they can be held to nothing more.

The decree of the court below is now reversed and set aside and the petition of the appellees is dismissed at their costs.