# Geist's Appeal.

# Schroeder's Appeal.

1. A partial assignment of a claim upon a municipal corporation is not binding upon the corporation; and the holder thereof has no lien on such claim that he can enforce against the general creditors of the assignor. Such an assignment amounts merely to an agreement to pay out of a particular fund.

2. City of Philadelphia's Appeal, 5 Norris 179, followed.

3. An Auditor appointed to distribute a balance in the hands of an assignee for the benefit of creditors, can only distribute to those claiming under the assignment. Those who claim adversely cannot be heard.

October 22nd 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN and CLARK, JJ., absent.

[Geist's Appeal.]

APPEALS from the Court of Common Pleas No. 1 of *Allegheny county :* Of October Term 1883, Nos. 5 and 6.

Appeals by F. D. Geist, assignee for the benefit of creditors of Adolph Oberhelman, and J. D. Schroeder, one of the sureties on the said assignee's bond, from a decree of said court, distributing the assigned estate.

Before the Auditor (T. H. Davis, Esquire), appointed to pass upon exceptions to the assignee's account, and to report distribution, the following facts appeared : On September 10th 1874 Adolph Oberhelman executed a deed of general assignment for the benefit of his creditors, to F. D. Geist. Among the personal assets, which came into the assignee's hands, was a claim of $5,344.40, designated in the inventory as " a claim against the city of Pittsburgh on account of contract building bridge, assigned to divers parties as collateral security." Prior to the execution of the deed of general assignment Oberhelman had made three separate assignments, of as many parts of this claim, to certain of his creditors. These assignments were in form as follows : " For value received, I, Adolph Oberhelman, do hereby sell, transfer and assign to S. A. Lang, V. P. and business manager of the Franklin Savings Fund and Safe Deposit Company, twelve hundred dollars of my claim against the city of Pittsburgh, for and on account of the sums due me by the said city for the building of the bridge across Saw-Mill Run."

There was no dispute as to the fact of the assignments, or as to the further fact that they had been given into the hands of the then city controller, and by him turned over to his successor in office.

Geist, as assignee, collected the entire claim from the city, by an action at law ; and appropriated the money to the purposes of his trust, disregarding the said assignments of parts thereof. This action on the part of the assignee was excepted to, upon the filing of his account, and formed the principal contention before the Auditor, who ruled that the said three partial assignments by Oberhelman were not binding upon his general assignee.

To this ruling exceptions were filed by the claimants under the partial assignments, which exceptions the court sustained, after argument, and entered a decree directing the Auditor to distribute the proceeds of the claim against the city, among the three assignees thereof, to the extent of the sums demanded by their assignments. Thereupon Geist, the general assignee, and Schroeder, one of his sureties, took these appeals, assigning for error, the decree of the court.

*Miller* (*McBride* with him), for Geist, appellant, and *Thomas*

[Geist's Appeal.]

*Herriott*, for Schroeder, appellant.—The assignments to the appellees were not binding on the city, because, where a municipality is a party to a contract, it is not bound to recognize partial assignments thereof : Phila's Appeal, 5 Norris 179. These assignments amounted merely to promises by Oberhelman, that he would pay the appellees out of money due him from the city ; and this did not give the appellees any lien upon the fund : Leading Cases in Equity, 3 Am. Ed. pp. 361–2. To sustain an equitable assignment there must be such an appropriation of the fund as to give the assignee the sole and only right to collect it, and there must also be a complete abandonment by the assignor of any right to appropriate or collect the fund : Christmas *v.* Russell, 14 Wallace 70 ; Trist *v.* Child, 21 Wallace 447 ; Rogers *v.* Hosack, 18 Wend. 319. A partial assignment of a claim binds no one unless accepted by the drawee : Jermyn *v.* Moffitt, 25 P. F. S. 399 ; Bank *v.* Gish's Assignee, 22 P. F. S. 13. The court erred in allowing the appellees to appear in this proceeding and claim anything from the assigned estate of A. Oberhelman. When an Auditor is appointed to distribute the funds in the hands of an assignee for the benefit of creditors, the claimant on the fund must claim under and by virtue of that assignment and not by title superior to or outside of the assignment. If any preference is claimed it must be by adversary proceedings : Okie's Appeal, 9 W. & S. 156 ; Jefferis' Appeal, 9 Casey 39 ; Wylie & Quail's Appeal, 11 Norris 196 ; Strickler's Appeal, 10 W. N. C. 535 ; Bush et al.'s Appeal, 15 P. F. S. 366, and Williams Bros.' Appeal, 13 W. N. C. 217.

*Thos. C. Lazear* (with whom were *Montooth Bros.* and *Powers, Force & Powers*), for appellees.—Although the assignments may not have been good as against the city, yet they were good as between the parties. This distinction was made in Philadelphia's Appeal, 5 Nor. 179. And if the assignments in this case were good against Oberhelman, they were equally good against his assignee, for a voluntary assignee is the mere representative of the assignor, enjoying only his rights, and bound where he would be bound : Twelves *v.* Williams, 3 Whart. 485 ; Vandyke *v.* Christ, 7 W. & S. 373 ; Wright *v.* Wigton, 3 Norris 166. A reference to the assignments shows that they were not mere promises to pay out of a certain fund, but that they were what they purported to be, actual assignments for a valuable consideration. Such assignments are always enforced in equity : East Lewisburg L. & M. Co. *v.* Mash, 10 Norris 99. Even an order to pay a debt out of a particular fund belonging to the debtor gives to the creditor a'

specific equitable lien upon the fund and binds it in the hands
of the drawee : Trost *v.* Childs, 21 Wallace 447 ; Sharpless *v.*
Welsh, 4 Dall. 279 ; Nesmith *v.* Drum, 8 W. & S. 9 ; Burn *v.*
Carvalho, 7 Simons 109 ; 4 Mylne & Craig 690 ; 2 Story Eq.
§ 1044.   The appellees claim not against but under the assign-
ment, and only as creditors of the assignor.   It is true they
look to a particular fund for payment in preference to other
creditors, by virtue of the lien or trust with which that fund is
burdened under the special assignments, in their favor, but
they do not dispute the right of the assignee to receive the
fund subject only to this equitable lien.   The case is not differ-
ent in principle from that of judgment creditors or mortgagees
of real estate held by assignees under a voluntary assignment.
Such creditors are never supposed to be acting adversely to the
assignments, because they claim priority of payment, as lien
creditors out of the proceeds of such real estate when sold by
the assignees for payment of debts.

Mr. Justice PAXSON delivered the opinion of the court,
January 7th 1884.

This was an appeal from the decree of the court below dis-
tributing the assigned estate of Adolph Oberhelman.   Among
the assets of said estate was a claim against the city of Pitts-
burgh for $5,344.40.   It was inventoried as " a claim against the
city of Pittsburgh on account of contract building bridge, as-
signed to different parties as collateral security."

Prior to his assignment to Geist for the benefit of his
creditors, Oberhelman had made partial assignments of this
claim to various parties as collateral security.   These partial
assignments were never accepted nor recognized by the city of
Pittsburgh, the debtor.   The assignee for creditors disregarded
them, collected the claim from the city, and used the proceeds
for the general purposes of the estate.   The Auditor held that
the partial assignments did not bind the fund ; that the respec-
tive assignees had no lien thereon, and gave the proceeds to the
general creditors.   Upon exceptions filed the court below re-
versed the Auditor and held that the holders of the partial
assignments were entitled to payment out of the fund, and
surcharged the general assignee with the amounts due them
respectively.   From this decree the said assignee and his surety
have appealed.

It was decided in the City of Philadelphia's Appeal, 5 Norris
179, that a municipal corporation is not bound to recognize a
partial assignment of a claim against it.   Applying that prin-
ciple to this case, it follows logically that the respective
assignees of portions of the claim could not have recovered

against the city of Pittsburgh. It is equally clear that appellant, as general assignee for creditors of Oberhelman, had the right to recover it, and in point of fact he did proceed to collect it. Have the appellees, who are the holders of the partial assignments, a claim upon the fund which they can enforce as against the general creditors of Oberhelman? We think not. They have no lien. Oberhelman, prior to the assignments to appellees, could have collected the money from the city and paid his general creditors, or any creditor, with it. The appellant, as his general assignee, has the same power. The partial assignments to the appellees were at most an agreement to pay them out of the fund. It was said by Mr. Justice SWAYNE in Christmas v. Russell, 14 Wallace 70 : "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment. . . . The assignor must not retain any control over the fund ; any authority to collect it, or any power of revocation ; if he does it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay, and is compelled to do so though forbidden by the assignor." The same doctrine is asserted in Gibson v. Stone, 43 Barb. 285 ; Rogers v. Hosack, 18 Wend. 319 ; Trist v. Child, 21 Wallace 447 ; Jermyn v. Moffit, 25 P. F. S. 399. In Mandeville v. Welch, 5 Wheaton 277, the rule is thus clearly stated by Mr. Justice STORY : "When the order is drawn on a general or a particular fund for a part only, it does not amount to an assignment of that part, or give a lien as against the drawee, unless he consent to the appropriation by an acceptance of the draft." It is useless to multiply authorities.

Aside from this it has been repeatedly held that upon the distribution of an assigned estate, a claimant upon the fund must claim by and through the assignment. He cannot claim adversely to it: Okie's Appeal, 9 W. & S. 156 ; Jefferis' Appeal, 9 Casey 39 ; Bush's Appeal, 15 P. F. S. 366 ; Wylie's Appeal, 11 Norris 196 ; Strickler's Appeal, 10 W. N. C. 535 ; Williams Bros. Appeal, 5 Out. 474. In the last case it was said in the opinion of the court : " An Auditor appointed to adjust and settle the accounts of a voluntary assignee for creditors is confined to the accounts between the assignee and the cestui que trust. Third persons claiming adversely cannot interfere in the settlement, but must resort to adversary proceedings."

The appellees are not claiming under the general assignment but against it. The fund consists of the proceeds of the assigned estate of Adolph Oberhelman ; the appellees are attempting to show that a portion of the fund does not belong to the assigned estate. This cannot be done. If the partial assignments to the appellees bind the fund, then to the extent of those

·assignments the fund does not belong to the assigned estate at all, and should not have been included in the account.

The decree is reversed at the costs of the appellees, and it is ordered that distribution be made in accordance with the principles indicated in this opinion.