Samuel Beaumont and William Beaumont, trading as Beaumont Bros., to the use of Merchant & Co., Appellants, v. Barry D. Lane, Owner or Reputed Owner, and Joel Lane, Contractor, and F. A. Mitchell, intervening.

*Practice, C. P.—Stipulated issue—Finding of facts and entry of judgment.*

Where parties, stipulating for themselves, have framed the issue to be tried and stated what facts should explicitly be found in order to entitle the plaintiffs to their judgment, and the facts having been found in favor of the plaintiffs, there is nothing left for the referee and the court but to enter judgment according to the express stipulation of the parties.

*Mechanic's lien—Equitable assignment—Building contract.*

An order, given by B., the subcontractor, directed to the owner of a building, "to pay to M. $180.00 and charge same to our account for material and labor on houses, per contract," of which L. and the main contractor had notice, although not accepted by L., is an equitable assignment of B.'s claim. The subsequent admission by L., garnisheed under attachment execution on a judgment against B. obtained by another creditor, of indebtedness due B., is no defense to a sci. fa. sur mechanic's lien brought by B. to use of M.

Argued Nov. 19, 1896. Appeals, Nos. 86 and 87, Nov. T., 1896, by plaintiffs, from judgment of C. P. Delaware Co., Dec. T., 1895, Nos. 97 and 98, in favor of defendant, on report of referee. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Amicable scire facias sur joint apportioned mechanic's lien. Before CLAYTON, P. J.

It appears from the testimony and the record that Barry D. Lane contracted with his father, Joel Lane, for the erection of certain buildings on his property. Joel Lane contracted with Beaumont Bros. to do the tinwork on said houses. Beaumont Bros. became indebted to Merchant & Co. in a large amount for materials furnished Beaumont Bros. by Merchant & Co. from time to time. The houses were constructed and the part of the work assigned to Beaumont Bros. under their contract for tinning was complete. A short time before its com-

pletion Beaumont Bros. gave an order upon Barry D. Lane for the payment of the sum of $180. The order is, viz:

"CHESTER, Pa., June 5, 1894.

"MR. BARRY D. LANE, Chester, Pa.;

"Dear Sir: In consideration of one dollar in hand paid, pay to Merchant & Co. the sum of one hundred and eighty dollars ($180.00) and charge the same to our account, for material and labor on houses, per contract.

"Yours Truly,

"BEAUMONT BROS."

"I accept above order payable at completion of work."

Barry D. Lane and Joel Lane had notice of this order on the day it was drawn. It was not however accepted by either of them. On July 7, 1894, F. A. Mitchell, upon a judgment against Beaumont Bros., issued an attachment in execution and summoned Joel Lane as garnishee. Joel Lane answered that he owed Beaumont Bros. the sum of $180, whereupon judgment was entered against him. Subsequently Beaumont Bros. filed two apportioned liens against the property of Barry D. Lane, naming him as owner and Joel Lane as contractor. These liens were marked for the use of Merchant & Co. They were filed January 10, 1895. Upon these liens an amicable action of scire facias was entered in the court below, which is fully set forth upon the record. Among other things it was stipulated in said amicable action, viz: "If the jury shall find that the said assignment of Beaumont Bros. to Merchant & Co. was made lawfully and in good faith before the right of the said Frank A. Mitchell accrued under the judgment and attachment in execution herein above referred to, and that at the time the right of the said Mitchell accrued, as aforesaid, the said Merchant & Co. were in good faith the owners of the said claim, then the verdict shall be rendered in favor of the plaintiffs and against the defendants for the sum of $90.00, with interest from July 1, 1894, in each of the above entitled cases; or if the jury shall find that the said Merchant & Co. were not lawfully and in good faith the owners of the said claim at the said time, then the verdict shall be entered in favor of the defendants and against the plaintiffs in each of the said cases." After the filing

of the amicable action on the 16th of December, 1895, the case was referred to George M. Booth, Esq., referee. On the trial of the case the referee was asked to find as matter of fact, viz: "The referee is asked to find as a fact that the assignments by the said Beaumont Bros. to Merchant & Co. of the claim against Barry D. Lane, upon which claim the said mechanic's lien is based, was made lawfully and in good faith before the attachment in execution, referred to in the agreement filed, issued; and that Merchant & Co. were in good faith owners of said claim before that time." The referee so found but entered judgment in favor of the defendant, and the court below affirmed the judgment. Plaintiffs appealed.

*Errors assigned* (1–11) were in substance, to the action of the court in dismissing exceptions to the referee's report, and holding that the order by Beaumont Bros. directed to Barry D. Lane in favor of Merchant & Co. did not operate as an equitable assignment of the sum designated therein, and in dismissing the following exception of plaintiffs to the report of referee:

Exception: The issue of fact agreed upon in the above case having been found by the referee in favor of appellants and against the defendant, the referee erred in concluding from these facts as matter of law that the plaintiffs were not entitled to recover.

*O. B. Dickinson*, for appellants.—After all the parties have agreed to submit their claims to the determination of one issue we must earnestly ask this court to protect us from being switched off to some other issue which we did not agree should terminate our rights.

An order, right or act, which makes an appropriation of a fund, amounts to an equitable assignment of that fund: Clemson v. Davidson, 5 Binn. 397; Patten v. Wilson, 34 Pa. 299; Spott's Est., 156 Pa. 281; Dale v. Land Co., 3 Phila. 328.

An assignment of demands which rests on expectancy only is valid in equity: Lumber Co. v. Marsh, 91 Pa. 96.

The form of assignment is immaterial so there be a clearly expressed intention of the immediate transfer of the right to the assignee: Moeser v. Schneider, 158 Pa. 412.

In order to complete an assignment as against the assignor

or his attachment creditor, the assignee need not give notice of
the claim: Bispham's Equity, sec. 168; Noble v. Brown, 79
Pa. 354.

It has been expressly ruled that the act of May 10, 1881, P. L.
14, does not apply to assignments: Trumbower v. Ivey, 2 Pa.
C. C. 470.

*Ward R. Bliss*, for appellee.—It is the duty of an assignee
to be diligent in perfecting his title, and, if guilty of laches, he
may be postponed to a subsequent purchaser who has been
injured thereby: 6 Am. & Eng. Ency. of Law, 663.     The
plaintiffs are pursuing an equitable remedy, and in equity the
lapse of much less than the legal limit of time may be fatal
laches, where the interests of third persons have intervened.
Gring's Appeal, 89 Pa. 336; Evans' Appeal, 81 Pa. 278; Ash-
hurst's Appeal, 60 Pa. 290.

An assignee who does not give notice to the debtor until
judgment has been rendered against him in an attachment by a
creditor of the assignor loses his priority: Richards v. Griggs,
16 Mo. 416.

An assignee who lies quiescent until a subsequent assignee
has proceeded to judgment, loses his priority: Judson v. Cor-
coran, 17 How. (U. S.) 612; Ins. Co. v. Corcoran, 1 Gray
(Mass.) 75.

OPINION BY WILLARD, J., December 7, 1896:

Under the terms of the amicable action and statement of facts
therein contained and the issue made up by the parties, it requires
more than ordinary ingenuity to determine just how judgment
could have been entered for the defendant in the court below.
It was agreed explicitly that if the assignment from Beaumont
Bros. to Merchant & Co. was made lawfully and in good faith
before the attachment in execution was issued by Frank A.
Mitchell, and that Merchant & Co. were in good faith the own-
ers of said claim, then judgment should be entered in their favor
for the sum of $90.00 in each case.     And it was further agreed
that if the said Merchant & Co. were not lawfully and in good
faith the owners of said claim at that time, then judgment should
be entered against the plaintiffs in each case.     As matter of fact
the referee found that the assignment was made lawfully and

in good faith, and that Merchant & Co. were in good faith the owners of the said claim before the issuing of the attachment by Mitchell. Having found this fact under the terms of the submission there could be but one judgment, no matter what the character of the assignment was, and that judgment should have been in favor of the plaintiffs in the court below; and these judgments must be reversed for the reason that the parties have stipulated for themselves, framed the issue to be tried and stated what facts should explicitly be found in order to entitle the plaintiffs to their judgments, and the facts having been found in favor of the plaintiffs there was nothing left for the referee and the court but to enter judgments according to the express stipulations of the parties.

This case might well rest here without going into the questions discussed by the referee and court below, but, notwithstanding the findings of law by the referee and their approval by the court, we are by no means convinced that the order of June 5, 1894, from Beaumont Bros., upon Barry D. Lane was not an equitable assignment of the sum of $180 to Merchant & Co. What were the relations of the parties? Barry D. Lane was the owner of the houses in process of construction. Joel Lane was his paramount contractor. Beaumont Bros. were the independent contractors for the tinwork under Joel Lane, and by virtue of their contract had a right of lien against the houses of Barry D. Lane for the payment of their debt of $180. The houses stood as surety for the payment of this debt. Barry D. Lane had a right, as soon as the work was done, to pay Beaumont Bros., and either deduct the amount from the contract price, or if they had already paid, proceed at once against Joel Lane, the contractor, to secure his reimbursement. SHARSWOOD, J., in Hill v. Witmer, 2 Phila. 72. There is no merit in the statement that he was misled or that Merchant & Co. were guilty of laches in giving notice of their order. The testimony of Samuel Beaumont is that "Joel Lane and Barry Lane had notice of the assignment the very day it was given." What then was the effect of this assignment? Barry D. Lane's house, as before stated, stood surety for the payment of this debt. He had the right to pay it the moment the order was given, if he saw fit, and charge the amount to Joel Lane. In case it was not paid by Joel Lane or by him, the lien subsequently filed

could have been enforced against his property. His house was debtor to the full contract price and to the claim of Beaumont Bros. If it was, there was a fund capable of equitable assignment by Beaumont Bros. to Merchant & Co. "Equity will support assignments of contingent interests and expectancies; things which have no present actual existence, but rest in mere possibility, not indeed as a present, positive transfer, operative *in præsenti*, for that can only be of things *in esse:*" East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 96. In this case it was not only possible that Barry D. Lane would have to pay Beaumont Bros.' claim, but it was probable. Barry D. Lane then being the owner of the property and being liable to pay this mechanic's lien, and having in his power the right to pay it and funds for that purpose, why did not the equitable assignment of Beaumont Bros. to Merchant & Co. pass to them the right of the former to the fund in his hands?

Looking at the character of this order of June 5, 1894, it was sufficient as an equitable assignment of the claim; it was drawn upon an account for material and labor on houses of Barry D. Lane as per contract, the amount was specific, to wit: $180, and he could not have been misled thereby. We do not agree with the learned court below in designating this order as a commercial draft or that it was simply an unaccepted draft, or that having been dishonored, it was of no further commercial value. Had it been an order, in form a perfect bill of exchange not specifying the fund out of which it was to be paid, it would not have been an equitable assignment of the fund. But it did specify the fund out of which it was to be paid, to wit, the fund in his hands for materials and labor done and furnished on his houses. It was therefore an equitable assignment of that fund. In Oakes v. Oram, decided by the Supreme Court in March, 1867, reported in the Legal Intelligencer in vol. 43 page 520, it was decided that "an order issued by A upon B to pay to C a sum 'out of moneys which may become due from coal sold and delivered' in a month subsequent to the date of the order unaccepted by B but left in his possession, is an equitable assignment of so much of the fund in B's hands as is specified in the order." In this case Oram was a coal operator, sold his coal to a railroad company, receiving his pay each month for coal mined and delivered dur-

ing the preceding month.   He drew orders in favor of various parties upon the R. R. Co.   The orders in question were drawn payable in the future upon monthly payments not yet earned. The paymaster refused to accept the orders, but kept them in his office for convenience.   Oakes, a judgment creditor of Oram, issued an attachment in execution and summoned the R. R. Co., as garnishee.   The attachment was issued subsequent to the date of the orders.   It was held that the orders were an equitable assignment of the fund pro tanto and entitled to preference over the attachment in execution.

It is strenuously urged that Joel Lane was the only debtor of Beaumont Bros., while strictly speaking this may be so, still the fact remains that Barry D. Lane's houses were surety for the debt and he was the custodian of the fund that must pay for their construction.   It mattered not to him whether he had paid the amount to Joel and by Joel it was paid to the Beaumonts or to Merchant & Co., on their order.   Neither he nor Joel suffered in the least by the transaction.   He was the person who had to pay for the construction, and we think the order upon him, under all the circumstances, was an equitable assignment of the $180, for which his buildings were surety.   If with full notice of this transaction, Joel afterwards saw fit to answer Mitchell's interrogatories, as he did, and allow judgment to be entered against him, he alone is to blame and must suffer the consequences.

We cannot agree that Merchant & Co. were guilty of laches as to the notice of the assignment (if notice was required). Samuel Beaumont, a witness for the appellee, before the referee stated explicitly that Joel and Barry D. Lane both had notice of the assignment the very day it was given.   Judgment was entered against Joel in the attachment execution at the suit of Mitchell on July 16, 1894.   The referee found as matter of fact that, on July 26, Joel and Barry D. Lane both had full notice of the assignment.   Joel did not see fit to appeal from the judgment entered against him at the suit of Mitchell, but allowed it to become final.

So far as the equities of this case are concerned they are, in our opinion, with the appellants, and while we could have decided this case as intimated in the former part of this opinion, without regard to the equities of the parties, in reversing

the judgment we are satisfied that no rule of equity has been violated.

The assignments of error are sustained, judgments reversed and judgments are here entered in favor of the plaintiff for the sum of ninety ($90.00) dollars in each case, with interest from July 1, 1894, and costs, including the costs of this appeal.